Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

John Di Giacomo
Eric Misterovich
REVISION LEGAL, PLLC
148 E. Front St.
3rd Floor
Traverse City, MI 49684
Telephone:    (231) 714-0100
Facsimile:    (231) 714-0200
john@revisionlegal.com
eric@revisionlegal.com

Attorneys for Plaintiff
CROWDSOURCING, LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWDSOURCING, LLC<br><br>                 Plaintiff,<br>   v.<br><br>COMMUNITYLEADER, INC.<br><br>                 Defendant. | Case No.:<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

FOR ITS COMPLAINT in this matter, Plaintiff, Crowdsourcing, LLC, by and

through its attorneys REVISION LEGAL, PLLC and RANALLO LAW OFFICE, states as follows:

## NATURE OF ACTION AND RELIEF SOUGHT

1. This is a civil action seeking damages for trademark infringement and breach of contract.

2. Plaintiff Crowdsourcing, LLC ("Crowdsourcing") seeks a judgment that CommunityLeader, Inc. ("CommunityLeader") has infringed upon its trademark rights and has breached various contracts it executed with Crowdsourcing, LLC between April 23, 2012 and August 1, 2013.

3. Plaintiff Crowdsourcing seeks damages for CommunityLeader's trademark infringement and breach of various contracts executed by and between the parties.

4. Additionally, Plaintiff Crowdsourcing seeks permanent injunctive relief for CommunityLeader's trademark infringement.

## PARTIES

5. Crowdsourcing, LLC is a limited liability organized under the laws of the State of California with its principal place of business in Los Angeles County, City of Los Angeles, California.

6. CommunityLeader, Inc. is a limited liability organized under the laws of the State of Nevada with its principal place of business in San Mateo County, City of San Mateo, California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(b), and 15 U.S.C. § 1121 because this action raises federal questions under the Lanham Act.

8. This Court has supplemental jurisdiction over the claims in this Complaint that arise under the common law of the State of California pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal

claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9. This Court has personal jurisdiction over Defendant CommunityLeader because Defendant is doing business within the State of California, maintains its principal place of business within the State of California, and has otherwise purposefully availed itself of this forum.

10. Venue is proper in this district because Defendant CommunityLeader is a resident of this district and is subject to personal jurisdiction in this district.

## FACTS

### Plaintiff Crowdsourcing's business

11. Plaintiff Crowdsourcing is a research, advisory, and implementation firm specializing in crowdsourcing and crowd funding solutions for private, public, and social enterprises.

12. Plaintiff Crowdsourcing provides consulting and advisory services to some of the world's leading crowd funding and crowdsourcing service providers, enterprises, and governments.

13. Plaintiff Crowdsourcing has also established a certification program to evaluate crowd funding software platforms and websites to ensure that crowd funding software platforms meet Crowdsourcing's standards of transparency, security, functionality, and crowd funding procedure.

14. This certification program, called The Crowdfunding Accreditation for Platform Standards (CAPS), is administered by Plaintiff Crowdsourcing which evaluates applicants for adherence to Crowdsourcing's standards. A council that participates in setting Crowdsourcing's standards is staffed by leading crowd funding platform operators and industry experts.

15. If an applicant meets Crowdsourcing's standards and pays the applicable accreditation fee, Crowdsourcing provides the successful applicant with a yearly license to display its Accredited Crowdfunding Platform certification

trademark to convey to others that it has met the requirements of the CAPS program.

16. The purpose of the CAPS program is to both protect both fundraisers, who use crowd funding platforms to raise money, and crowd funders, who pledge or invest capital at the request of fundraisers.

17. Additionally, Plaintiff Crowdsourcing operates crowdsourcing.org, a curated crowdsourcing and crowd funding industry website.

18. Plaintiff Crowdsourcing's crowdsourcing.org is one of the most visited, most read, and well-regarded crowdsourcing and crowd funding websites on the Internet.

19. Due to its high niche web traffic, Plaintiff sells valuable advertising space at crowdsourcing.org to third party advertisers who wish to offer or sell goods or services to those participating in the crowd funding and crowd sourcing industry.

20. Additionally, Plaintiff's crowdsourcing.org serves as a sales lead generation tool for advertisers who offer advertisements on the website.

21. Plaintiff Crowdsourcing often connects those who need services within the crowd funding and crowdsourcing niche with its advertisers.

**Plaintiff Crowdsourcing's Mark**

22. Since as early as March 28, 2012, Plaintiff Crowdsourcing has utilized its ACCREDITED CROWDFUNDING PLATFORM certification trademark in association with its CAPS program. See **Exhibit A**, Printout of Trademark Registration.

23. As a result of its longstanding use of the ACCREDITED CROWDFUNDING PLATFORM certification mark in commerce, Plaintiff Crowdsourcing has acquired common law trademark rights in and to that mark.

24. Additionally, Plaintiff Crowdsourcing applied for and was granted registration of its ACCREDITED CROWDFUNDING PLATFORM mark on May 7, 2013 (USPTO Reg. No. 4332789).

**Defendant's Business**

25. Defendant CommunityLeader is a software and service provider for broker/dealers and other organizations that desire to link fundraisers with investors.
26. Specifically, CommunityLeader provides crowd funding software platforms that facilitate securities-based crowd funding offerings.
27. CommunityLeader's Apicista software is a standalone accredited crowd funding platform, which manages relationships between businesses and qualified investors.
28. CommunityLeader's CampaignLeader software is a business development platform for companies that seek to develop, implement, and support a crowd funding campaign.
29. CommunityLeader's CommunityInvestor software is a smartphone application that allows individuals to track, commit, and subscribe to businesses that they would like to support.
30. CommunityLeader's CommunityLeader LIVE Events are educational video clips, webinars, workshops, and boot camps that provide knowledge on how to create and grow an equity crowd funding campaign.
31. CommunityLeader also provides consulting services to crowd funding platform providers.

**Defendant's Unlawful Actions**
    **i. Crowdfunding Accreditation Agreement**
32. On April 23, 2012, Crowdsourcing and CommunityLeader executed an

agreement, titled Crowdfunding Accreditation Agreement ("CAA"). See **Exhibit B**, Crowdfunding Accreditation Agreement.

33. The CAA sets fort Crowdsourcing's requirements for CAPS program.
34. Under the terms of the CAA, CommunityLeader was required to score at least 85 out of 100 points on the CAPS accreditation questionnaire.
35. Additionally, CommunityLeader was to pay an annual accreditation fee to participate in the CAPS program.
36. CommunityLeader was also to pay an annual license fee to use and display the ACCREDITED CROWDFUNDING PLATFORM certification mark to convey to third parties that Crowdsourcing had certified its services.
37. Under the terms of the CAA, and subject to its payment obligations, CommunityLeader was provided with a limited, non-exclusive, non-sublicensable, worldwide, and revocable license to use the ACCREDITED CROWDFUNDING PLATFORM mark to demonstrate CommunityLeader's goods or services and CommunityLeader's operational procedures meet CAPS program standards.
38. Under the CAA, Defendant CommunityLeader is expressly prohibited from assigning, licensing, or sublicensing the ACCREDITED CROWDFUNDING PLATFORM mark to its clients that license its software. Other companies that use CommunityLeader's software would be subject to a separate agreement between Crowdsourcing and said company.
39. CommunityLeader has failed to pay the license fee for the twelve (12) month period ending April 22 2013 and for the twelve (12) month period ending April 22, 2014.
40. Despite its failure to pay the license fee, CommunityLeader continues to use the ACCREDITED CROWDFUNDING PLATFORM mark to convey to third parties that its services are certified by Plaintiff Crowdsourcing.
41. Further, CommunityLeader has sublicensed the ACCREDITED

CROWDFUNDING PLATFORM mark to numerous third parties in violation of the CAA.

42. CommunityLeader regularly falsely advertises that licensees of its software automatically receive accreditation under the CAA. Numerous clients of CommunityLeader use the ACCREDITED CROWDFUNDING PLATFORM mark in their advertising and on their websites.

### ii. MSA 1

43. On October 16, 2012, Plaintiff Crowdsourcing and Defendant CommunityLeader executed an agreement, titled Master Services Agreement ("MSA 1"). See **Exhibit C**, MSA 1.

44. Under the terms of MSA 1, Plaintiff Crowdsourcing was appointed as "a non-exclusive representative" to promote, market, and refer clients to CommunityLeader's software products and services either directly via an email or in an automated manner via website visitors clicking CommunityLeader banners placed throughout crowdsourcing.org.

45. For this service, Defendant CommunityLeader was to pay Plaintiff Crowdsourcing a fifteen percent (15%) fee on the initial set-up and licensing deposits for CommunityLeader's Apicista software for all clients that were referred to CommunityLeader by Crowdsourcing.

46. CommunityLeader was to pay Crowdsourcing a twenty percent (20%) fee on the initial set-up and licensing deposits for CommunityLeader's CampaignLeader software for all clients that were referred to CommunityLeader by Crowdsourcing, as well as a ten percent (10%) fee on all monthly, quarterly, or annual residual fees collected by CommunityLeader.

47. CommunityLeader was to pay Crowdsourcing a ten percent (10%) fee on the initial set-up and licensing deposits for CommunityLeader's CommunityInvestor software for all clients that were referred to

CommunityLeader by Crowdsourcing, as well as a ten percent (10%) fee on all monthly, quarterly, or annual residual fees collected by CommunityLeader.

48. Additionally, for each partner product promoted on crowdsourcing.org, Defendant CommunityLeader was to pay Crowdsourcing fees ranging from $50 to $100 depending on the type of product or services offered.

49. Under the terms of MSA 1, CommunityLeader was to provide Crowdsourcing with a monthly compensation report on or before the 10th day of each subsequent month.

50. Though CommunityLeader provided sporadic lead and opportunity reports, which were printed from its customer relations management software SugarPro, it never provided Crowdsourcing with a monthly compensation report showing the monies due to Crowdsourcing based on amounts that it had received and was owed from clients referred to it by Crowdsourcing under the terms of MSA 1.

51. CommunityLeader has confirmed sales were made from Crowdsourcing's referrals and a limited list is disclosed in the provided leads and opportunity reports. Further, CommunityLeader has acknowledged that it secured other clients from referrals from Crowdsourcing in email communications to Crowdsourcing. Further, Crowdsourcing has confirmed through third parties that CommunityLeader provided services to third parties as a result of referrals originated by Crowdsourcing either through direct introduction or advertising on crowdsourcing.org.

52. Under MSA 1, CommunityLeader has paid Crowdsourcing only $250 in affiliate commissions.

### iii. MSA 2

53. On August 1, 2013, Plaintiff Crowdsourcing and Defendant CommunityLeader executed an agreement to replace MSA 1, titled Master

Services Agreement. See **Exhibit D**, MSA 2.

54. Under the terms of MSA 2, Defendant CommunityLeader was to pay Crowdsourcing $1,500 in settlement of all its monthly base-fee advertising services payment obligations under MSA 1 which excluded its duty to pay ongoing commissions for all clients referred to CommunityLeader by Crowdsourcing prior to August 1, 2013.

55. Defendant CommunityLeader was to pay Crowdsourcing a base advertising fee of $3,500 per month, which was due on the 15th day of each month.

56. Additionally Defendant CommunityLeader was to pay Plaintiff Crowdsourcing ten percent (10%) of all funds collected by CommunityLeader for clients referred to CommunityLeader by Crowdsourcing that purchased or licensed the following products or services: Apicista, CampaignLeader, CommunityInvestor, CommunityLeader LIVE Events, and consulting services after 1 August 2003.

57. CommunityLeader was to provide Crowdsourcing with a monthly compensation report on or before the 10th day of each subsequent month.

58. Under MSA 2, CommunityLeader has paid Crowdsourcing only $500 in affiliate commissions.

59. CommunityLeader is also currently $21,000 behind in the payment of the monthly advertising base fee through to July 31, 2014.

60. CommunityLeader has failed to provide any reports showing the amounts that it has received from clients and monies owed by clients originated by Crowdsourcing.

   **iv. Consulting Services Agreement**

61. On August 19, 2013, Plaintiff Crowdsourcing and Defendant CommunityLeader executed an agreement, titled Consulting Services Agreement ("CSA"). See **Exhibit E**, Consulting Services Agreement.

62. Under the terms of the CSA, CommunityLeader was to provide specific consulting services on a project involving the Inter-American Development Bank.
63. Specifically, CommunityLeader was to write a report consistent with Crowdsourcing's requirements on behalf of Crowdsourcing on the opportunity for crowdfunding in Mexico.
64. The first draft of the report was to be delivered by CommunityLeader to Crowdsourcing by August 30, 2013.
65. The second draft of the report was to be delivered by CommunityLeader to Crowdsourcing by September 6, 2013.
66. The final draft of the report was to be delivered by CommunityLeader to Crowdsourcing by September 12, 2013.
67. For its services, Crowdsourcing was to pay CommunityLeader $13,380 consisting of $7,500 in service fees and $5,880 in the form of a credit to be used against monthly advertising fees.
68. CommunityLeader failed to timely provide a first draft, second draft, or final draft of the report required under the CSA. In fact, ultimately CommunityLeader communicated they could not fulfill the agreement and complete their contractual obligations.
69. As a result of CommunityLeader's failure to complete its duties under the CSA, Crowdsourcing was forced to rework and complete the report, which resulted in over 700 hours of labor.
70. Additionally, Crowdsourcing was forced to hire a third party contractor to aid in the completion of the report.
71. CommunityLeader's failure to perform caused Crowdsourcing irreparable reputational harm with the Inter-American Development Bank that has jeopardized the award of future work.

# COUNT I – TRADEMARK INFRINGEMENT

72. Plaintiff reasserts paragraphs 1-71 as if fully restated herein.
73. Plaintiff is the owner of the registered trademark ACCREDITED CROWDFUNDING PLATFORM, which is registered with the United States Patent and Trademark Office under Reg. No. 4332789. See **Exhibit A**, Printout of Trademark Registration.
74. As the owner and administrator of the ACCREDITED CROWDFUNDING PLATFORM certification mark, Plaintiff acts as a representative of the users of that mark in an infringement action.
75. Defendant has used in commerce a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's trademark in connection with the sale, offering for sale, distribution, and advertising of its services.
76. Defendant's use of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's trademark is likely to cause confusion, or to cause mistake, or to deceive.
77. Defendant's use of Plaintiff's trademark is identical with, or substantially indistinguishable from, Plaintiff's trademark.
78. As a result, Plaintiff has suffered monetary damages and a loss of goodwill associated with its ACCREDITED CROWDFUNDING PLATFORM mark.
79. Consequently, Defendant's unauthorized use of Plaintiff's mark constitutes trademark infringement pursuant to 15 U.S.C. § 1114.
80. Plaintiff is entitled to the recovery of Defendant's profits, Plaintiff's damages, and the costs of this action.
81. Plaintiff is entitled to the recovery of treble damages and attorneys' fees or statutory damages and attorneys' fees, depending on Plaintiff's election at trial, for Defendant's intentional and willful use of a counterfeit mark.

82. In light of Defendant's actions, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

83. Defendant's actions make this an exceptional case and, therefore, Defendant is entitled to its costs and attorneys' fees.

## COUNT II – FALSE DESIGNATION OF ORIGIN

84. Plaintiff reasserts paragraphs 1-83 as if fully restated herein.

85. Plaintiff has certified third parties with the ACCREDITED CROWDFUNDING PLATFORM certification mark since as early as March 28, 2012. See **Exhibit A**, Printout of Trademark Registration.

86. As the owner and administrator of the ACCREDITED CROWDFUNDING PLATFORM certification mark, Plaintiff acts as a representative of the users of that mark in an infringement action.

87. Defendant CommunityLeader has used the ACCREDITED CROWDFUNDING PLATFORM mark in commerce through its use of that certification mark to convey its compliance with Crowdsourcing's accreditation standards and by licensing that mark to third parties.

88. Defendant CommunityLeader's use of the ACCREDITED CROWDFUNDING PLATFORM certification mark is commercial in nature.

89. Defendant CommunityLeader's use of the ACCREDITED CROWDFUNDING PLATFORM certification mark is likely to cause confusion, to cause mistake, and to deceive the public by suggesting that its clients crowd funding portals are authorized by, sponsored by, approved by, or affiliated with Plaintiff Crowdsourcing and those certified through Plaintiff's accreditation program.

90. Defendant CommunityLeader's use of the ACCREDITED CROWDFUNDING PLATFORM mark in commerce is likely to confuse the public.

91. Defendant CommunityLeader has profited from this false designation of origin by conveying to customers that CommunityLeader's software is accredited, that their clients are permitted to use the ACCREDITED CROWDFUNDING PLATFORM mark, and that their clients crowd funding platforms are accredited crowdfunding platforms that comply with Plaintiff's accreditation standards.

92. Defendant CommunityLeader has profited from this false designation of origin by sublicensing, without authorization, the ACCREDITED CROWDFUNDING PLATFORM to third parties.

93. Defendant CommunityLeader's use of the ACCREDITED CROWDFUNDING PLATFORM mark constitutes unfair competition and trademark infringement pursuant to 15 U.S.C. § 1125(a).

94. Plaintiff is entitled to the recovery of Defendant CommunityLeader's profits, Plaintiff's actual damages, and the costs of this action.

95. In light of Defendant's actions, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

96. Plaintiff is also entitled to its attorneys' fees consistent with 15 U.S.C. § 1117 because this is an exceptional case.

## **COUNT III - VICARIOUS INFRINGEMENT**

97. Plaintiff reasserts paragraphs 1-96 as if fully restated herein.

98. As the owner and administrator of the ACCREDITED CROWDFUNDING PLATFORM certification mark, Plaintiff acts as a representative of the users of that mark in an infringement action.

99. Defendant CommunityLeader has, without authorization, licensed the ACCREDITED CROWDFUNDING PLATFORM mark to third parties.

100. Defendant and its third party licensees have an actual or apparent partnership.

101. Defendant and its third party licensees exercise joint ownership or control

over the use of the ACCREDITED CROWDFUNDING PLATFORM mark on the licensed services.

102. Defendant's third party licensees are liable for direct trademark infringement.

103. Consequently, Defendant is liable for vicarious infringement.

104. As a result of Defendant's vicarious infringement, Plaintiff has suffered monetary damages.

105. Plaintiff is entitled to the recovery of Defendant's profits, Plaintiff's actual damages, and the costs of this action.

106. Plaintiff is also entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

107. Plaintiff is also entitled to attorneys' fees consistent with 15 U.S.C. § 1117 because this is an exceptional case.

## COUNT IV - CONTRIBUTORY INFRINGEMENT

108. Plaintiff reasserts paragraphs 1-107 as if fully restated herein.

109. As the owner and administrator of the ACCREDITED CROWDFUNDING PLATFORM certification mark, Plaintiff acts as a representative of the users of that mark in an infringement action.

110. Defendant CommunityLeader has, without authorization, licensed the ACCREDITED CROWDFUNDING PLATFORM mark to third parties.

111. Defendant's third party licensees are liable for trademark infringement.

112. Defendant has intentionally induced its third party licensees to infringe upon the ACCREDITED CROWDFUNDING PLATFORM certification mark.

113. Defendant has the right and ability to control and monitor the instrumentality used by its third party licensees to infringe upon the ACCREDITED CROWDFUNDING PLATFORM certification mark, namely, its software

114. Defendant has continued to supply its software products as certified by Crowdsourcing and license without authorization the ACCREDITED CROWDFUNDING PLATFORM mark for use in association with its software products.

115. Defendant's actions constitute contributory infringement under the law.

116. As a result of Defendant's contributory infringement, Plaintiff has suffered monetary damages.

117. Plaintiff is entitled to the recovery of Defendant's profits, Plaintiff's actual damages, and the costs of this action.

118. Plaintiff is also entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

119. Plaintiff is also entitled to attorneys' fees consistent with 15 U.S.C. § 1117 because this is an exceptional case.

## COUNT V – BREACH OF CONTRACT

120. Plaintiff reasserts paragraphs 1-119 as if fully restated herein.

**CAA**

121. On April 23, 2012, Plaintiff and Defendant executed the CAA.

122. Under the terms of the CAA, Defendant was expressly prohibited from using the ACCREDITATED CROWDFUNDING PLATFORM mark in association with any goods or services not certified by Plaintiff.

123. Defendant was also expressly prohibited from sublicensing the ACCREDITATED CROWDFUNDING PLATFORM mark to third parties.

124. Under the CAA, Defendant was to pay an annual accreditation fee to participate in Plaintiff's certification program.

125. Under the CAA, Defendant was to pay an annual license fee to use and display the ACCREDITATED CROWDFUNDING PLATFORM certification mark.

126. Defendant has failed to pay the license fee in breach of the CAA's terms.

127. Defendant has failed to pay the annual accreditation fee in breach of the CAA's terms.

128. Defendant has sublicensed the ACCREDITATED CROWDFUNDING PLATFORM MARK in breach of the CAA's terms.

129. Defendant has used the ACCREDITATED CROWDFUNDING PLATFORM MARK in association with services not certified by Plaintiff.

130. Defendant's actions constitute a breach of the CAA.

**MSA 1**

131. On October 16, 2012, Plaintiff and Defendant executed the MSA 1.

132. Under the terms of the MSA 1, Defendant was to pay Plaintiff an affiliate commission for all clients that were referred to Defendant by Plaintiff.

133. Additionally, under the terms of the MSA 1, Defendant was to provide Plaintiff with monthly compensation reports.

134. Defendant has failed to provide Plaintiff with monthly compensation reports under the MSA 1.

135. Defendant has also failed to pay Plaintiff affiliate commissions due and owing under MSA 1.

136. Defendant's actions constitute a breach of the MSA 1.

137. Defendants breach of the MSA 1 has caused Plaintiff damages.

**MSA 2**

138. On August 1, 2013, Plaintiff and Defendant executed the MSA 2.

139. Under the terms of the MSA 2, Defendant was to pay Plaintiff a base fee of $3,500 per month.

140. Under the terms of MSA 2, Defendant was to pay Plaintiff fifteen percent (15%) of all funds collected by Defendant for clients referred to Defendant by Plaintiff occurring during the term of MSA 1.

141. Under the terms of MSA 2, Defendant was to pay Plaintiff ten percent (10%) of all funds collected by Defendant for clients referred to Defendant

by Plaintiff.

142. Additionally, under the terms of the MSA 2, Defendant was to provide Plaintiff with monthly compensation reports.

143. Defendant has failed to provide Plaintiff with monthly compensation reports under MSA 2.

144. Defendant has also failed to pay the base fee owned to Plaintiff under MSA 2.

145. Defendant has also failed to provide Plaintiff affiliate commissions due and owing under MSA 2.

146. Defendant's actions constitute a breach of the MSA 2.

147. Defendant's breach of the MSA 2 has caused Plaintiff damages.

**CSA**

148. On August 19, 2013, Plaintiff and Defendant executed the CSA.

149. Under the terms of the CSA, Defendant was to provide specific consulting services on a project involving the Inter-American Development Bank.

150. Under the terms of the CSA, Defendant was to write a report consistent with Crowdsourcing's specifications.

151. Defendant failed to perform its duties under the CSA.

152. Defendant's actions constitute a breach of the CSA.

153. Defendant's breach of the CSA has caused Plaintiff damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully asks that the Court enter the following judgment against Defendant:

1. That the Court award Plaintiff its actual damages, lost profits, treble damages, consequential damages, incidental damages, exemplary damages, statutory damages, punitive damages, and any other damages allowable under law;

2. That the Court permanently enjoin and restrain Defendant from using the ACCREDITED CROWDFUNDING PLATFORM certification mark, or any

colorable imitation thereof, to create a likelihood of confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Defendant, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Defendant;

3. That the Court award Plaintiff prejudgment interest according to law;
4. That the Court award Plaintiff its costs and attorneys' fees; and
5. That the Court award Plaintiff any other relief to which it is entitled or that the Court may deem proper and just.

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all eligible counts contained within this Complaint.

DATED: July 8, 2014

By:___/s/Nicholas Ranallo_____

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

John Di Giacomo, pro hac vice pending
148 E. Front St.
3rd Floor
Traverse City, MI 49684
Telephone: (231) 714-0100
Fax: (231) 714-0200
john@revisionlegal.com