Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

John Di Giacomo
Eric Misterovich
REVISION LEGAL, PLLC
148 E. Front St.
3rd Floor
Traverse City, MI 49684
Telephone:     (231) 714-0100
Facsimile:     (231) 714-0200
john@revisionlegal.com
eric@revisionlegal.com

Attorneys for Plaintiff
CROWDSOURCING, LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWDSOURCING, LLC | Case No.: CV-14-3098 YGR |
| Plaintiff, | **NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS COUNTER-PLAINTIFF'S COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| COMMUNITYLEADER, INC. | |
| Defendant. | Date: Tuesday, November 18, 2014 |
| | Time: 2:00 p.m. |
| | Judge: Hon. Yvonne Gonzalez Rogers |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Tuesday, November 18, 2014, at 2:00 p.m. before the Honorable Yvonne Gonzalez Rogers in Courtroom 1 – 4th Floor of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay St., Oakland, CA 94612, Plaintiff/Counter-Defendant Crowdsourcing, LLC will and hereby does move to dismiss Defendant/Counter-Plaintiff's Counterclaim.

Plaintiff/Counter-Defendant Crowdsourcing, LLC, pursuant to Fed. R. Civ. Pro. 12(b)(6), requests this Court dismiss Defendant/Counter-Plaintiff's Counterclaim. Plaintiff/Counter-Defendant Crowdsourcing, LLC motion is based on Defendant/Counter-Plaintiff's failure to state plausible claims for trademark infringement, false designation of origin, unfair trade practices, injunctive relief, intentional interference with contract, negligent interference with contract, deceit, and malicious prosecution, the accompanying Memorandum of Points and Authorities, and all other papers filed in this action.

## ISSUES TO BE DECIDED

I.  **As to CommunityLeader's "Trademark Claims"**

   a.  Whether CommunityLeader stated a plausible claim of relief for trademark infringement, false designation of origin, unfair trade practices, and injunctive relief, where its allegations show Crowdsourcing truthfully asserting that CommunityLeader is a participant in the CAPS program?

   b.  Has Crowdsourcing established the three elements of nominative fair use: 1) that the product or service in question must be one not readily identifiable without the use of the trademark; 2) only a reasonably necessary potion of the mark was used to identify the product or service, and 3) Crowdsoucing did nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by CommunityLeader?

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

c. Has CommunityLeader alleged a use beyond nominative fair use?

II. **As to CommunityLeader's claim for intentional interference with contract, has CommunityLeader plead facts plausible to support the elements of the claim, including:**

a. Whether Crowdsourcing intentionally acted to breach a contractual relationship between CommunityLeader and a third party?

b. Whether CommunityLeader had the right to sublicense the ACCREDITED CROWDFUNDING PLATFORM mark to third parties?

c. Whether CommunityLeader alleged an actual breach or disruption of a contractual relationship?

III. **As to CommunityLeader's claim for negligent interference with contract:**

a. Whether the State of California recognizes a claim for negligent interference with contract?

b. If so, whether CommunityLeader has alleged a legally recognizable duty?

c. Does the economic loss doctrine bar CommunityLeader's claim sounding in negligence?

IV. **As to CommunityLeader's claim for deceit:**

a. Whether CommunityLeader has alleged a legally recognizable duty?

b. Does the economic loss doctrine bar CommunityLeader's claim sounding in negligence?

V. **As to CommunityLeader's claim for malicious prosecution:**

a. Whether CommunityLeader alleged Crowdsourcing commenced a prior legal action that was pursued to a legal termination in CommunityLeader's favor?

b. Whether CommunityLeader alleged that prior action was brought without probable cause?

c. Whether CommunityLeader alleged that prior action was initiated with malice?

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .............................................................................................................. 4

**INTRODUCTION** ............................................................................................................................... 5

**LEGAL STANDARD** ......................................................................................................................... 8

**ARGUMENT** ........................................................................................................................................ 8

I.   COMMUNITYLEADER'S CLAIMS FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR TRADE PRACTICES, AND INJUNCTIVE RELIEF MUST BE DISMISSED BECAUSE THEY ARE BARRED BY THE DOCTRINE OF NOMINATIVE FAIR USE. .......................................................... 8

II.   COMMUNITYLEADER'S CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT MUST BE DISMISSED BECAUSE COMMUNITYLEADER HAS FAILED TO ALLEGE ACTUAL DISRUPTION OR BREACH OF A CONTRACTUAL RELATIONSHIP OR AWARENESS OF A POTENTIAL INFERENCE ON THE PART OF CROWDSOURCING. ........................................................................................................................... 12

III.   COMMUNITYLEADER HAS FAILED TO ALLEGE A VIABLE CLAIM FOR NEGLIGENT INTERFERENCE WITH CONTRACT BECAUSE THAT CAUSE OF ACTION IS NOT AVAILABLE UNDER CALIFORNIA LAW. ...... 14

IV.   COMMUNITYLEADER'S CAUSE OF ACTION FOR DECEIT MUST BE DISMISSED. ............................... 16

V.   COMMUNITYLEADER HAS FAILED TO STATE A CLAIM FOR MALICIOUS PROSECUTION. ................. 18

**CONCLUSION** ................................................................................................................................... **20**

# TABLE OF AUTHORITIES

**Cases**

*Bertero v. National General Corp.*, 13 Cal.3d 43 (1974) ................................................................ 19

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002) ......................................................... 10

*Erlich v. Menezes*, 21 Cal. Rptr. 2d 886 (Cal. 1999) .................................................................... 19

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979) ........................................................................... 17

*Limandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ....................................................................... 16

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ................................................................. 18

*New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992) ............................ 10

*Pacific Gas and Electric Co. v. Bear Stearns and Co. et al.*, 50 Cal. 3d 1118 (1990) ................ 14

*Playboy Enters., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) ...................................... 10

*Quelimane Company, Inc. et al. v. Stewart Title Guaranty Company et al.*, 77 Cal. Rptr. 2d 709

    (1998) ................................................................................................. 15

*RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................. 9

*Robinson Helicopter Co., Inc. v. Dana Corp*, 22 Cal. Rptr. 3d 352 (2004) ............................... 18

*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863 (Cal. 1989) ....................................... 19

*Stevo Design, Inc. v. SBR Marketing, Ltd.*, 919 F. Supp. 2d 1112 (D. Nev. 2013) ..................... 11

*Zamos v. Stroud*, 12 Cal. Rptr. 3d 54 (Cal. 2004) .................................................... 20

**Statutes**

Cal. Civ. Code § 1709 .................................................................................. 17

Cal. Civ. Code § 1710 .............................................................................. 17, 18

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 9

Fed. R. Civ. P. 65 ..................................................................................... 21

Fed. R. Civ. P. 8(a) .................................................................................... 9

## INTRODUCTION

Crowdsourcing, LLC ("Crowdsourcing") is a limited liability company organized under the laws of the State of California with its principal place of business in Los Angeles County, City of Los Angeles, California. CommunityLeader, Inc. ("CommunityLeader") is a corporation organized under the laws of the State of Nevada with its principal place of business in San Mateo County, City of San Mateo, California. Crowdsourcing is a research, advisory, and implementation firm specializing in crowdsourcing and crowd funding solutions for

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

private, public, and social enterprises. Crowdsourcing provides consulting and advisory services to some of the world's leading crowd funding and crowdsourcing service providers, enterprises, and governments. CommunityLeader is a software and service provider for broker/dealers and other organizations that desires to link fundraisers with investors. Specifically, CommunityLeader provides crowd funding software platforms that facilitate securities-based crowd funding offerings.

Crowdsourcing has established a certification program to evaluate crowd funding software platforms and websites to ensure that crowd funding software platforms meet Crowdsourcing's standards of transparency, security, functionality, and operational procedure. This certification program, called The Crowdfunding Accreditation for Platform Standards ("CAPS") is administered by Crowdsourcing to evaluate applicants for adherence to Crowdsourcing's standards and Crowdsourcing reviews applications for compliance with CAPS standards and accordingly provides CAPS certification to successful applicants. Crowdsourcing established a council of leading crowd funding platform operators and industry experts to set CAPS program's standards.

If an applicant meets Crowdsourcing's standards and pays the applicable accreditation fee, Crowdsourcing provides the successful applicant with a yearly license to display its Accredited Crowdfunding Platform certification trademark to convey to others that it has met the requirements of the CAPS program. Crowdsourcing has utilized its ACCREDITED CROWDFUNDING PLATFORM CERTIFICATION trademark in association with its CAPS program since as early as March 28, 2012. Crowdsourcing applied for and was granted registration of its ACCREDITED CROWDFUNDING PLATFORM mark on May 7, 2013 (USPTO Reg. No. 4332789). See Dkt. # 1-1. As owner and administrator of the ACCREDITED CROWDFUNDING PLATFORM certification mark, Crowdsourcing acts as a representative of the users of that mark in trademark infringement actions and has a duty to protect against consumer confusion in the marketplace arising out of the use or misuse of same

- 6 -

or similar marks.

On April 23, 2012, Crowdsourcing and CommunityLeader executed an agreement, titled Crowdfunding Accreditation Agreement ("CAA"). See Dkt. # 1-2. Under the terms of the CAA, CommunityLeader was required to score at least 85 out of 100 points on the CAPS accreditation questionnaire and pay an annual accreditation fee to participate in the CAPS program. CommunityLeader was also to pay an annual license fee to use and display the ACCREDITED CROWDFUNDING PLATFORM certification mark to convey to third parties that Crowdsourcing had certified its services. Under the terms of the CAA, and subject to its payment obligations, CommunityLeader was provided with a limited, non-exclusive, non-sublicensable, worldwide, and revocable licensed to use the ACCREDITED CROWDFUNDING PLATFORM mark to demonstrate that CommunityLeader's goods or services and operational procedures meet CAPS program standards. See Dkt. #1-2. Under the terms of the agreement, CommunityLeader was expressly prohibited "from using the Certification Mark on services that do not comply with Crowdsourcing's Accreditation Standards."

To ensure that consumers, who visit third party websites of participants in the CAPS program, can be certain that third party websites are, in fact, certified under the CAPS program, Crowdsourcing maintains a list of certified third parties on its website at http://www.crowdsourcing.org/caps. In its Counterclaim, CommunityLeader asserts, in its claims for trademark infringement, false designation of origin, unfair trade practices, and injunctive relief, that Crowdsourcing should be held liable for listing CommunityLeader as a participant in its CAPS program on Crowdsourcing's website. In its Motion to Dismiss, Crowdsourcing asserts that CommunityLeader's claims for trademark infringement, false designation of origin, unfair trade practices, and injunctive relief are wholly barred by the doctrine of nominative fair use, a question of law. Further, Crowdsourcing asserts that CommunityLeader has failed to plead viable causes of action for intentional interference with

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

contract, negligent interference with contract, deceit, and malicious prosecution. For these reasons, CommunityLeader's counterclaims for trademark infringement, false designation of origin, unfair trade practices, injunctive relief, intentional interference with contract, negligent interference with contract, deceit, and malicious prosecution must be dismissed.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), a claim may be dismissed by motion for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 560 (C.D. Cal. 2005). Though the court must view all allegations in the complaint in the light most favorable to the non-movant and must accept all material allegations and reasonable inferences to be drawn from them as true, "a court need not accept as true unreasonable inferences or conclusory legal allegations." *Id* at 561.

## ARGUMENT

I.   **CommunityLeader's claims for trademark infringement, false designation of origin, unfair trade practices, and injunctive relief must be dismissed because they are barred by the doctrine of nominative fair use.**

CommunityLeader has failed to state a claim for trademark infringement, false designation of origin, unfair trade practices, and injunctive relief ("Trademark Claims") because CommunityLeader's claims are barred by the doctrine of nominative fair use. CommunityLeader's Trademark claims hinge on the allegation, asserted with respect to all of the Trademark Claims, that "CS continues to post CLI MARK and CLI's name on CS's website as 'CAPS' accredited software which bolsters CS's services by its purported association with CLI." See Dkt. #19, ¶¶ 25, 31, 39, and 43. In short, CommunityLeader alleges that Crowdsourcing should be held liable under the Trademark Claims for truthfully asserting

that CommunityLeader is a participant in the CAPS program. Since the law protects Crowdsourcing's actions, CommunityLeader's Trademark Claims must be dismissed.

The "nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product.*" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). This analysis replaces the standard likelihood of consumer confusion analysis applicable in trademark cases. *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). To establish nominative fair use, a defendant must prove three elements: (1) that the product or service in question must be one not readily identifiable without the use of the trademark; (2) only so much of the mark may be used as is reasonably necessary to identify the product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *See New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Nominative fair use is a question of law and, therefore, "if the pleadings fail to allege a mark used beyond nominative fair use, then the plaintiff has failed to allege likelihood of confusion. That is, the plaintiff has failed to state a claim for which relief can be granted." *Stevo Design, Inc. v. SBR Marketing, Ltd.*, 919 F. Supp. 2d 1112, 1123-24 (D. Nev. 2013).

CommunityLeader has alleged that Crowdsourcing used the COMMUNITYLEADER mark to state, on its website, that CommunityLeader was a participant in the CAPS program. Specifically, Plaintiff has alleged that "CS continues to post CLI MARK and CLI's name on CS's website as "CAPS" accredited software," "Plaintiff CS has profited from this false designation of origin by conveying to customers that CLI is a participant in CS's CAPS program and that CS has accredited CLI's software by publishing CLI MARK on CS website," and "Plaintiff CS continues to list CLI on CS's website as an 'accredited platform' while also suing CLI for designating itself as such." See Dkt. #19, ¶¶ 25, 31, and 38. In short, CommunityLeader alleges that Crowdsourcing's upholding of its end of the CAA by listing

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

CommunityLeader as an accredited platform, despite CommunityLeader's failure to pay in full and its sublicensing of the ACCREDITED CROWDFUNDING PLATFORM mark to third parties in direct violation of the CAA, constitutes trademark infringement and associated claims.

CommunityLeader's alleged COMMUNITYLEADER mark was displayed by Crowdsourcing, along with numerous other platforms accredited under the CAPS program, under two headers: (1) "We congratulate the following platforms on receiving their ribbon of accreditation!" and (2) "Platforms." Crowdsourcing cannot, without using the name of CommunityLeader and the alleged COMMUNITYLEADER mark, truthfully convey to the public that CommunityLeader is a participant in the CAPS program. CommunityLeader has failed to allege that Crowdsourcing used more of the mark than is reasonably necessary to identify that CommunityLeader is a participant in the CAPS program. And, as stated above, CommunityLeader has failed to allege that Crowdsourcing did anything to suggest that it is sponsored or endorsed by CommunityLeader. The headers on Crowdsourcing's website, which identify participants in the CAPS program, make clear that Crowdsourcing has not undertaken any action to convey that it is sponsored or endorsed by CommunityLeader.

This case is similar to *Stevo Design, Inc. v. SBR Marketing, Ltd*. In *Stevo*, Stevo sold electronic access to sports betting reports. SBR operated a website, which published sports betting and handicapping information. Stevo filed suit against SBR, alleging claims of trademark infringement and copyright infringement, because, Stevo alleged, SBR's users had published Stevo's protected works on SBR's website without having obtained a license. In examining SBR's nominative fair use defense, the District of Nevada recognized that the doctrine of nominative fair use "divides trademark 'use' from trademark 'mention.'" *Stevo* at 1123. "To use a mark as a mark—a 'trademark use'—the defendant must attempt to identify the source of the mark with the defendant itself." In examining whether SBR attempted to identify itself with Stevo, the Court held,

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

Here, Plaintiffs have failed to allege anything beyond SBR's nominative fair use of their marks. First, the marks at issue are the proper names of the handicapping analysts. It would be difficult (if not impossible) to identify Stevo's sports analysis services without using these marks, especially since the quality of the analyst bears directly on the quality of the analysis (and conveying information about quality is one of a trademark's functions). Second, as alleged in the complaint, when the marks appeared on SBR's website, they only identified Stevo's services. For example, one SBR user identified as "Pin Fish" posted handicapping reports under the subject line "redd, Jordan, davis, nover, o'brien, mancini??? (citation omitted). The subject line identifies Plaintiffs' analysts Redd, Jordan, Davis, Nover, O'Brien, and Mancini, and the body of the posting contained these analysts' reports. Third, the criticism of Stevo's analysts on the message board greatly reduces the likelihood that a visitor to SBR's message board would infer Plaintiffs' "sponsorship or endorsement" of SBR users' postings. Finally, the various screen names under which Stevos' reports were posted –"Pin Fish," "PepperMillRick," "goldengreek," etc.—do not suggest to a visitor that either the posting user or SBR itself is the ultimate source of the report.

*Stevo* at 1124.

As stated above, it would be impossible to identify CommunityLeader's services without using the alleged COMMUNITYLEADER mark. As alleged by CommunityLeader in its Counterclaim, the mark was used to identify CommunityLeader's services and its participation in the CAPS program, not Crowdsourcing's services. And the manner in which the alleged COMMUNITYLEADER mark was displayed on Crowdsourcing's website makes clear that CommunityLeader was a participant in the CAPS program. For these reasons,

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

CommunityLeader's Trademark Claims must be dismissed as a matter of law.

**II.**     **CommunityLeader's claim for intentional interference with contract must be dismissed because CommunityLeader has failed to allege actual disruption or breach of a contractual relationship or awareness of a potential inference on the part of Crowdsourcing.**

CommunityLeader's claim for intentional interference with contract must also be dismissed for its failure to allege an actual disruption or breach of a contractual relationship or that Crowdsourcing was aware that its actions would cause interference with CommunityLeader's purported contracts. For its Count V, CommunityLeader alleges "intentional interference with economic relationship." Since CommunityLeader has not alleged interference with a prospective business relationship, and because it asserts that "Plaintiff CS knew of the contracts and relationships that existed between Defendant CLI and… third parties…," Crowdsourcing interprets CommunityLeader's allegations as a claim for intentional interference with contract. See Dkt. #19 ¶ 47.

To establish a claim for intentional interference with contract, CommunityLeader must allege and prove the following elements: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *See Pacific Gas and Electric Co. v. Bear Stearns and Co. et al.*, 50 Cal. 3d 1118, 1126 (1990). CommunityLeader has alleged that it has entered into contracts with non-specified third parties "in order to sell, service, or host white-label websites…." See Dkt. # 19 ¶ 46. CommunityLeader has failed, however, to allege that Crowdsourcing intentionally acted to breach or disrupt CommunityLeader's relationships with

- 12 -

third parties. CommunityLeader asserts that Crowdsourcing "failed to perform, make payments, and provide acknowledgement to CLI to use CS MARK in relation to such third party from-end (sic) websites despite receiving commission on many of them." In short, CommunityLeader alleges that Crowdsourcing's enforcement of its trademark rights in and to the ACCREDITED CROWDFUNDING PLATFORM mark through this lawsuit serves as the basis for CommunityLeader's intentional interference with contract claim.

But Crowdsourcing's enforcement of its trademark rights are neither wrongful nor a justification for an intentional interference with contract cause of action. Crowdsourcing has alleged, and the terms of the CAA support, that CommunityLeader was expressly prohibited from sublicensing the ACCREDITED CROWDFUNDING PLATFORM mark to third parties. See Dkt. # 1-2 ("Crowdsourcing grants to Applicant a… non-sublicensable… license to use the Certification Mark on or in connection with Applicant's crowdfunding services that meet the Accreditation Standards."); see also Dkt. #1 ¶ 38 ("Under the CAA, Defendant CommunityLeader is expressly prohibited from assigning, licensing, or sublicensing the ACCREDITED CROWDFUNDING PLATFORM mark to its clients that license its software."). And CommunityLeader has also failed to plead that Crowdsourcing knew that its enforcement of its trademark rights would cause some unspecified harm to third parties to whom which CommunityLeader had no contractual right to sublicense the ACCREDITED CROWDFUNDING PLATFORM mark. *See Quelimane Company, Inc. et al. v. Stewart Title Guaranty Company et al.*, 77 Cal. Rptr. 2d 709 (1998) (citing Rest. 2d Torts, § 766, com. J., at p. 12) ("If the actor is not acting criminally nor with fraud or violence or other means wrongful in themselves but is endeavoring to advance some interest of his own, the fact that he is aware

- 13 -

that he will cause interference with the plaintiffs contract may be regarded as such a minor and incidental consequence and so far removed from the defendant's objective that as against the plaintiff the interference may be found to be not improper."). CommunityLeader has simply failed to allege any improper interference with a contract.

Nor has CommunityLeader alleged an actual breach or disruption of a contractual relationship. It alleges that Crowdsourcing terminated contracts with CommunityLeader, but it fails to allege that any contracts between CommunityLeader and its unspecified third parties have been terminated as a result of Crowdsourcing's alleged actions. See Dkt. # 49 ¶ ("As a proximate result of Plaintiff's failure to perform, pay, and permit use of CS MRK (sic) and its subsequent improper termination of the contracts, Defendant suffered damages in a yet unascertained amount, the extent of which will be subject to proof at trial."). CommunityLeader's failure to allege a breach of a specific and identifiable contract is determinative of its claim for intentional inference with contract, and, for this reason, CommunityLeader has failed to state a claim upon which relief can be granted.

**III.     CommunityLeader has failed to allege a viable claim for negligent interference with contract because that cause of action is not available under California law.**

As with its claim for intentional interference with contract, CommunityLeader broadly asserts that Crowdsourcing should be held liable for a claim of "negligent interference with economic relationship." In support of this alleged cause of action, CommunityLeader asserts that "Plaintiff was informed that Defendant would be required to enter into aforementioned contracts with third parties" and that "[i]n spite of the foreseeability of harm to Defendant's economic relationships, Plaintiff failed to perform, make payments, and provide

- 14 -

acknowledgement to CLI to use CS MARK in relation to such third party front-end websites."

See Dkt. #19 ¶¶ 53, 54. Again, CommunityLeader asserts that Crowdsourcing has interfered

with its contractual relationships with third parties, not a prospective business relationship, so

Crowdsourcing has understood CommunityLeader's claim as one for negligent interference

with contract[1].

California, however, expressly does not recognize a cause of action for negligent

interference with contract. Specifically, the California Court of Appeals, in *Limandri v.*

*Judkins*, examined this claim:

> For the same reason, the complaint also fails to state a cause of action for
>
> negligent interference with contractual relations (as opposed to prospective
>
> economic advantage. In Fifeld Manor v. Finston (1960) 54 Cal.2d 632 [7 Cal.
>
> Rptr. 377, 354 P.2d 1073, 78 A.L.R. 2d 810], the California Supreme Court
>
> noted: "[W]ith the exception of an action by the master for tortious injuries to
>
> his servant, thus depriving the master of his servant's services, which traces
>
> back to medieval English law [citations], the courts have consistently refused to
>
> recognize a cause of action based on negligent, as opposed to intentional,
>
> conduct which interferes with the performance of a contract between third
>
> parties or renders its performance more expensive or burdensome. [Citations.]"

*Limandri v. Judkins*, 52 Cal. App. 4th 326, 349 (1997). Even if California recognized this

---

[1] It is worth noting that, even if CommunityLeader's claim was read as one for negligent interference with prospective business economic advantage, CommunityLeader has failed to plead that Crowdsourcing owed CommunityLeader a duty to care that was breached when Crowdsourcing filed this lawsuit for infringement of its trademark rights.

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

claim, CommunityLeader has failed to allege that Crowdsourcing has or had breached a legally

recognizable duty. Additionally, even if CommunityLeader had pled a duty, the only inference

that can be drawn from its allegations is that its alleged losses are economic in nature

stemming from a breach of contract. See Dkt. #19 ¶ 55 ("Defendant suffered damages in a yet

unascertained amount…."). Such an allegation, under the economic loss doctrine, sounds only

in contract, not in tort. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 22 Cal. Rptr. 3d 352,

358 (2004) ("The economic loss rule requires a purchaser to recover in contract for purely

economic loss due to disappointed expectations, unless he can demonstrate harm above and

beyond a broken contractual promise"); *see also J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 808

(1979) ("Following these principles, recovery for negligent interference with prospective

economic advantage will be limited to instances where the risk of harm is foreseeable and is

closely connected with the defendant's conduct, where damages are not wholly speculative and

the injury is not part of the plaintiff's ordinary business risk."). For this reason,

Crowdsourcing's Motion to Dismiss must be granted and CommunityLeader's claim for

negligent interference with contract must be dismissed.

**IV.     CommunityLeader's cause of action for deceit must be dismissed.**

CommunityLeader's cause of action for deceit must also be dismissed. Pursuant to Cal.

Civ. Code § 1709, "One who willfully deceives another with intent to induce him to alter his

position to his injury or risk, is liable for any damage which he thereby suffers." Additionally,

under Cal. Civ. Code § 1710, such deceit is either:

> (1) The suggestion, as a fact, of that which is not true, by one who does not
> believe it to be true;

- 16 -

(2) The assertion, as a fact, of which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise, made without any intention of performing it.

Cal. Civ. Code § 1710. One who asserts a cause of action for deceit must plead and prove actual reliance. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993) ("[I]t is entirely consistent with those statutes that California courts have always required plaintiffs inactions for deceit to plead and prove the common law element of actual reliance").

CommunityLeader asserts that Crowdsourcing should be held liable for deceit because Crowdsourcing "continues to withhold funds owed to [CommunityLeader] from [Crowdsourcing]" under the Consulting Services Agreement. See Dkt. #19 ¶ 57. Further, CommunityLeader alleges that it relied on Crowdsourcing's promise to "pay the monies owed to Defendant under the CSA, and the referrals, marketing, conferences, articles, and reports under the CAA and MSA 2." See Dkt. #19 ¶ 59. In short, CommunityLeader asserts that Crowdsourcing failed to comply with its contracts in support of its claim of deceit.

As above, CommunityLeader has failed to allege that Crowdsourcing has breached any independent duty arising under tort law. Tort damages, whether for deceit or negligent interference, are available in contract cases only where "a breach of duty directly cases physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; or where the contract was

- 17 -

fraudulently induced." *Robinson Helicopter Co., Inc. v. Dana Corp*, 22 Cal. Rptr. 3d 352, 359 (2004). "If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." *Erlich v. Menezes*, 21 Cal. Rptr. 2d 886, 981 (Cal. 1999). Here, CommunityLeader has only alleged that Crowdsourcing has failed to perform under the contracts between the parties, and CommunityLeader's bald assertion that it relied on Crowdsourcing's promises under the contracts between the parties and suffered a loss of business reputation because Crowdsourcing did not hold conferences, even if taken as true, is insufficient to support an independent claim for deceit[2]. Consequently, Crowdsourcing's Motion to Dismiss must be granted.

## V.      CommunityLeader has failed to state a claim for malicious prosecution.

CommunityLeader has also failed to state a claim for malicious prosecution. To establish a cause of action for malicious prosecution of either a criminal or civil proceeding, CommunityLeader must establish "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." *Bertero v. National General Corp.*, 13 Cal.3d 43, 50 (1974). A cause of action for malicious prosecution "has traditionally been regarded as a disfavored cause of action" because it has the potential to impose an "undue 'chilling effect' on the ordinary citizen's willingness… to bring a civil dispute to court." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 872 (Cal. 1989).

In support of its claim for malicious prosecution, CommunityLeader alleges: (1) that

---

[2] Reading CommunityLeader's claims in a light most favorable to it, the primary basis for CommunityLeader's independent duty is that Crowdsourcing represented that CommunityLeader would be given a Gold Sponsorship package at all Crowdsourcing conferences and, since multiple conferences were not held, CommunityLeader suffered "loss of business reputation." But the MSA 2 reads, "CLI will be granted a Gold Sponsorship package at all CROWDSOURCING conferences held during the Performance period." See Dkt. #1-4 ¶ 2.4. Crowdsourcing held only one such conference, and CommunityLeader was granted a Gold Sponsorship package at that conference. Under the terms of the MSA 2, Crowdsourcing was under no obligation to provide a set number of conferences and, as a result, CommunityLeader, accepting its allegations as true, is limited to economic damages and has failed to state a breach of an independent duty outside of contract law.

- 18 -

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

"Plaintiff has no basis for arguing a breach of contract claim since Defendant paid everything owed under all contracts;" (2) that "MSA 1 was superseded and replaced by MSA 2;" (3) that Crowdsourcing's counsel failed to contact CommunityLeader prior to filing the lawsuit; and (4) that Crowdsourcing's counsel refused to agree to a stipulation to extend the time to respond to the Complaint. See Dkt. 19 ¶¶ 102, 103, and 104. Since CommunityLeader has failed to meet the elements of a malicious prosecution action, this claim must be dismissed as a matter of law.

First, CommunityLeader has failed to allege that a prior lawsuit was commenced by or at the direction of Crowdsourcing and was pursued to a legal termination in favor of CommunityLeader. This alone should serve as a basis to dismiss CommunityLeader's claim. CommunityLeader contends, under *Zamos v. Stroud*, that continuing to pursue a lawsuit lacking probable cause also serves as a basis for a malicious prosecution claim. In *Zamos*, the defendants in the malicious prosecution action continued their prosecution of an underlying fraud action even after learning it was baseless. *See Zamos v. Stroud*, 12 Cal. Rptr. 3d 54, 62-63 (Cal. 2004). Here, however, no such determination has been made, and it cannot reasonably be said that Crowdsourcing's claims are without merit.

Crowdsourcing has alleged, and CommunityLeader has admitted in evidence to be presented at trial, that it owes Crowdsourcing affiliate payments[3]. Additionally, contrary to CommunityLeader's assertions, CommunityLeader is still under an obligation to pay affiliate fees under MSA 1. See Dkt. 1-3 ¶ 6.4 ("CLI agrees to pay… a one-time payment… as settlement on all previous agreements accept the (sic) as it relates to the ongoing incentive fee for CROWDSOURCING accounts secured prior to the Performance Period[4]…."). Crowdsourcing has alleged and presented evidence attesting to the merit of, viability of, and probable cause associated with its claims. And CommunityLeader has failed to allege that

---

[3] On July 17, 2014, George Stroebel, Chief Financial Officer of CommunityLeader, emailed Carl Esposti, CEO of Crowdsourcing, stating, "we concede some incentive payments are due to Crowdsourcing."
[4] Under MSA 2, accounts "secured prior to the Performance Period" were secured under the terms of MSA 1.

- 19 -

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

Crowdsourcing has filed or continued to prosecute its claims with malice. Therefore, CommunityLeader cannot maintain a cause of action for malicious prosecution, as it has failed to allege a claim that is plausible on its face.

Finally, CommunityLeader has alleged in support of its claim for malicious prosecution that Crowdsourcing's counsel failed to contact CommunityLeader prior to filing its lawsuit and would not agree to a stipulation to extend the time to respond to the Complaint. Since CommunityLeader has failed to allege that a prior lawsuit has been terminated in its favor, its allegations must again be read as asserting a malicious prosecution claim on the basis that Crowdsourcing continues to prosecute a lawsuit without probable cause. CommunityLeader's claims in this respect are asserted against a non-party, namely, Crowdsourcing's counsel. Regardless, Crowdsourcing, and any plaintiff wrongfully aggrieved, has the right to seek judicial assistance without notice when its rights have been violated, as occurred in this case. See, for example, Fed. R. Civ. P. 65, which provides for ex parte temporary restraining orders. Further, a plaintiff also has the right to decline to waive its rights, and to require compliance with the timelines specified under the Federal Rules of Civil Procedure for responding to complaints. CommunityLeader's allegations fail to rise to the level of a malicious prosecution claim, and CommunityLeader has failed to state a claim for malicious prosecution that is plausible on its face.

## CONCLUSION

For the reasons stated, Plaintiff/Counter-Defendant Crowdsourcing, LLC respectfully requests this Honorable Court grants its Partial Motion to Dismiss.

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

Date: September 26, 2014         By:      __/JAD/_____

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

John Di Giacomo, pro hac vice
148 E. Front St.
3rd Floor
Traverse City, MI 49684
Telephone: (231) 714-0100
Fax: (231) 714-0200
john@revisionlegal.com

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2014 a true and correct copy of Plaintiff's Brief in Support of Partial Motion to Dismiss Counter-Plaintiff's Counterclaim was served on Counter-Plaintiff via the ECF electronic filing system.


By:      __/JAD/_____

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

John Di Giacomo, pro hac vice
148 E. Front St.
3rd Floor
Traverse City, MI 49684
Telephone: (231) 714-0100
Fax: (231) 714-0200
john@revisionlegal.com

NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
CASE NO. 14-cv-3098 YGR